IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
TERESA VANOVER,                )
                               )
                 Petitioner,   )
                               )
      v.                       )     1:21CV113
                               )
STATE OF NORTH CAROLINA,       )
                               )
                 Respondent.   )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entries 2, 5.) Respondent has moved to dismiss on grounds of untimeliness. (Docket Entries 12, 13.) For the reasons that follow, the Court should grant Respondent's Motion to Dismiss and dismiss the Petition as untimely.

## I. Procedural History

On May 31, 2016, in the Superior Court of Rockingham County, Petitioner pled guilty to 24 counts of felony child abuse by prostitution and 24 counts of promoting prostitution of a minor or severely mentally disabled person arising out of the abuse of her two minor daughters. (See Docket Entry 2, ¶¶ 1, 4-6; see also Docket Entry 13-2 at 3.)[1] In accordance with the plea agreement, the trial court sentenced Petitioner to three consecutive sentences

---

[1] Throughout this Memorandum Opinion, pin citations refer to the page numbers that appear in the footer appended to documents upon their docketing in the Court's CM/ECF system.

of 80 to 156 months' imprisonment and, for each of the remaining 45 counts, the trial court imposed prison sentences of 80 to 156 months to run concurrently with the three consecutive sentences, making Petitioner's total active sentence 240 to 348 months. (See Docket Entry 13-2 at 3.) Petitioner did not appeal.[2]

On September 17, 2018, Petitioner (through post-conviction counsel) filed a motion for appropriate relief ("MAR") with the trial court (see Docket Entry 13-2), which that court, after a hearing, granted the same day (see Docket Entry 13-3). Petitioner contended in her MAR that, after the Rockingham County District Attorney "resigned from office amid a fraud scandal[,]" the Interim District Attorney reviewed the cases of all defendants charged in the abuse of Petitioner's daughters, including Petitioner's cases, and "discovered that the indictments in [Petitioner]'s cases were defective in several ways." (Docket Entry 13-2 at 3.) The trial court found in its Order that:

> 1. Every count of every indictment for which [Petitioner] was sentenced contained at least one defect.
>
> 2. Each of these defects made the indictments invalid, and therefore the trial court lacked jurisdiction to enter judgments.
>
> 3. The State's failure to provide [Petitioner] with essential information showing that her daughters were not severely mentally disabled made [Petitioner]'s guilty

---

[2] Although Petitioner checked the box on her Petition indicating she appealed her convictions (see Docket Entry 2, ¶ 8), the information she supplied about that alleged appeal actually reflects details regarding her Motion for Appropriate Relief ("MAR") filed in the trial court in 2018 (see id., ¶ 9).

2

pleas not knowing or voluntary, and therefore violated her constitutional rights.

4. For these reasons, the judgments must be set aside.

(Id. at 4.)

That same day, the State charged Petitioner by bill of information with seven counts of felony child abuse by prostitution and five counts of promoting the prostitution of a minor. (See Docket Entry 13-4.) Pursuant to the terms of a plea agreement, Petitioner pled guilty to those charges that day as well (see id. at 2-4), and the State dismissed 17 counts of felony child abuse by prostitution, 13 counts of promoting the prostitution of a minor, and seven counts of promoting the prostitution of a minor or person with a mental disability (see id. at 4-6). In accordance with the plea agreement, the trial court consolidated the convictions and sentenced Petitioner to two consecutive prison terms of 60 to 132 months. (See Docket Entry 13-5.) Petitioner did not appeal those judgments and convictions. (See Docket Entry 2, ¶¶ 8-11; see also Docket Entry 5, ¶¶ 8-11.)

Petitioner thereafter submitted the instant Petition to this Court on February 9, 2021 (see Docket Entry 2 at 15), which she amended as of right under Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure by the submission of an amended Petition on March 1, 2021 ("Amended Petition") (see Docket Entry 5 at 15).[3]

---

[3] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court deems Section 2254 petitions as filed on the
(continued...)

3

Respondent moved to dismiss the Petition and Amended Petition on grounds of untimeliness (Docket Entries 12, 13), and Petitioner responded in opposition (Docket Entries 16, 17). For the reasons that follow, the Court should grant Respondent's Motion to Dismiss, because Petitioner submitted her Petition and Amended Petition outside of the one-year limitations period.

## II. Grounds for Relief

The Petition raises four grounds for relief:

1) "The information the [District Attorney] destorted [sic] was information to get his indictments against [Petitioner]" (Docket Entry 2, ¶ 12(Ground One); see also id., ¶ 12(Ground One)(a) (alleging as "[s]upporting facts" that "[the District Attorney] put in [Petitioner's] indictments about [her] daughters being mentally challenged to give [Petitioner] more time. It took 3 years for [her] co[-]defendant Mickey Snow to get a motion put in to get [Petitioner's] daughters-victims to get evaluated. It was proven [her] daughters-victims were not mentally challenged."));

2) "During my hearing for my trail [sic] [Petitioner] tryed [sic] to speak on things that were twisted" (id., ¶ 12(Ground Two); see also id., ¶ 12(Ground Two)(a) (setting forth as "[s]upporting facts" that "[her] attorney [] told [her] to sit and be quiet [because she was] going to mess the plea up"));

3) "In [Petitioner's] MAR [the District Attorney] and Assistant [District Attorney] give [sic] distorted information to the courts" (id., ¶ 12(Ground Three); see also id., ¶ 12(Ground Three)(a) (providing that "[Petitioner's] daughters-victims were not told about [Petitioner's] court date so [her] daughters could come to court to speak to [the trial court]" and that "[the trial court] only heard what the [District Attorney] had to say and [Petitioner's] attorney [] agreed with

---

[3](...continued)
date the petitioner signs the petition, under penalty of perjury, as submitted to prison authorities.

everything so really [Petitioner's] victims never got to speak in court . . . even after they became adults" as "[s]upporting facts")); and

4) "Distored [sic] the perseption [sic] of [Petitioner's] case by not allowing [her] daughters-victims to testify at [Petitioner's] second hearing" (id., ¶ 12(Ground Four); see also id., ¶ 12(Ground Four)(a) (asserting that "[her] daughters/victims wish to state their case before a judge" as "[s]upporting facts")).

Petitioner's Amended Petition proffers three additional Grounds for Relief:

5) "Alluding to the fact [Petitioner] was treated unfairly fourced [sic] to plead guilty" (Docket Entry 5, ¶ 12(Ground One); see also id., ¶ 12(Ground One)(a) (maintaining as "[s]upporting facts" that she "[was] told [her] oldest daughter could be charged if [Petitioner] did not except [sic] plea. [Petitioner] was fored [sic] and scared into plea of guilty. Kept [her] at police station for 16 hrs with noting [sic] to eat while preparing [her] case. After [she] got to the prison a year later [a] detective [] and [a Department of Social Services] worker came to see [Petitioner] to find what the lawyers and [Petitioner] were doing when [they] were trying to prove the lies in the Inditements [sic]. The detective said [Petitioner and her lawyers] would never be able to prove that [the detective and others] lied on [Petitioner's] indictments. [The detective] promised [Petitioner] pictures of [her] daughters if [she] told him what the lawyers were doing."));

6) "When [Petitioner] went to court for [her] MAR [her] lawyer [] made a statement if [Petitioner] had $2,50000 [sic] [the lawyer] would be able to get [Petitioner] out of [her] charges" (id., ¶ 12(Ground Two); see also id., ¶ 12(Ground Two)(a) (proffering that "[t]he detective wrote [Petitioner's] statements when [the District Attorney] read he read things [Petitioner] did not say" and that "[Petitioner] tryed [sic] to tell them in court on May 31, 2016 but [her attorney] told [her] to be quiet or [she] would mess up [her] plea" as "[s]upporting facts")); and

7) "[Petitioner's] victims did not come to court in 2018 [because] the [District Attorney] did not tell them" (id., ¶ 12(Ground Three); see also id., ¶ 12(Ground

5

Three)(a) (supplying the "[s]upporting facts" that "[t]he courts did not want [Petitioner's] daughters to speak for some reason" and that [Petitioner and her daughters] would like for a judge to hear their side")).[4]

## III. Discussion

Respondent seeks dismissal of the Petition and Amended Petition on the grounds that Petitioner filed them outside of the one-year limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), see 28 U.S.C. § 2244(d)(1). (See Docket Entry 13 at 4-8.) In order to assess Respondent's statute of limitations argument, the Court must first determine when Petitioner's one-year period to file her Petition commenced. The United States Court of Appeals for the Fourth Circuit has explained:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made

---

[4] For ease of reading, when quoting from Petitioner's filings, the Court applied standard capitalization conventions.

6

> retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008). The Court must determine timeliness on claim-by-claim basis. See Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6 (2005).

Respondent correctly contends that the Petition and Amended Petition qualify as untimely under subparagraph (A). (Docket Entry 13 at 4-6.)[5] North Carolina limits the ability of individuals who

---

[5] Neither Petitioner nor Respondent argues that subparagraphs (C) or (D) apply in this situation. (See Docket Entries 2, 5, 13, 16, 17.) Moreover, the plain language of subparagraphs (C) and (D) confirms that they have no possible application, as Petitioner's Grounds for Relief do not invoke a new "constitutional right" recognized by the United States Supreme Court and "made retroactively applicable to cases on collateral review," 28 U.S.C. § 2244(d)(1)(C), and Petitioner knew, or through exercise of due diligence should have known, of the factual predicates of all of her Grounds for Relief since the time of her guilty pleas and judgments on September 17, 2018. (See Docket Entry 2, ¶ 12; see also Docket Entry 5, ¶ 12.) Regarding subparagraph (B), Petitioner asserts in the paragraph of the Petition requesting an explanation of timeliness that she had "been trying to get back into court," but that "[n]o one seem[ed] to want to help until Judge Myers filed for [Petitioner's] writ for habeas corpus" (Docket Entry 2, ¶ 18; see also Docket Entry 5, ¶ 18 (contending that Petitioner had "been trying to get to go back to court sense [sic] 2018 [but] the [District Attorney], judge, wont [sic] respond to tell [her] anything [and North Carolina Prisoner Legal Services ('NCPLS')] tells [Petitioner she] cant [sic] go back to court," as well as that "the prison says one thing and combine [sic] records says something different")), which could constitute an attempt to argue that she faced a state-created "impediment to filing" the instant Petition, 28 U.S.C. § 2244(d)(1)(B). Any such argument fails, however, because "conclusory allegation[s] do[ ] not suffice to show delayed accrual under section 2244(d)(1)(B)." Kiesz v. Spearman, No. CV 13-5674, 2014 WL 462864, at *3 (C.D. Cal. Feb. 4, 2014) (unpublished); see also Broussard v. Warden, S. La. Corr. Ctr., No. 2:11CV1757, 2012 WL 3067599, at *4 (W.D. La. July 9, 2012) (unpublished) ("[The p]etitioner implies that he is entitled to the benefits of 28 U.S.C. § 2244(d)(1)(B) . . . [because, inter alia, prison] staff block and delay incoming and outgoing mail. . . . [These] conclusory allegations do not establish the existence of a State created impediment to filing."), recommendation adopted, 2012 WL 3067596 (W.D. La. July 27, 2012) (unpublished). Moreover, Petitioner has failed to show how her alleged inability to acquire assistance from NCPLS and various state officials to "get back into court" (continued...)

7

plead guilty to appeal their convictions as a matter of right. See N.C. Gen. Stat. § 15A-1444. Here, the trial court sentenced Petitioner to two terms of 60 to 132 months in prison (see Docket Entry 13-5), sentences in the presumptive range for Class D felonies with a prior record level of I, see N.C. Gen. Stat. § 15A-1340.17(c) (version effective October 1, 2013, applicable to Petitioner's offenses in July 2014). Therefore, Petitioner could not appeal her convictions as a matter of right, see N.C. Gen. Stat. § 15A-1444(a1), and Petitioner's convictions finalized under subparagraph (A) on September 17, 2018 - the day the trial court signed the judgment and commitment forms in her criminal case (see Docket Entry 13-5). See Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004) (finding that, because the petitioner lacked right to appeal, limitation period ran from day of judgment) (Osteen, Sr., J., adopting recommendation of Dixon, M.J.).[6]

---

[5](...continued)
(Docket Entry 5, ¶ 18) actually impeded her ability to timely file the instant, federal Petition in this Court. Furthermore, notwithstanding her alleged communications issues, Petitioner managed to file the instant Petition, Amended Petition, and numerous subsequent filings in this Court. (see Docket Entries 2, 5, 9, 10, 16-23.) Petitioner does not explain how she remained able to take such actions after the limitation period had expired, but could not have done so earlier. Under these facts, no basis exists for belated commencement of the statute of limitations under § 2244(d)(1)(B).

[6] Further, even assuming arguendo Petitioner had a right to appeal her guilty pleas and judgments of September 17, 2018, her cases finalized 14 days later on Monday, October 1, 2018, when her time to file notice of appeal expired. See N.C. R. App. P. 4(a) (allowing 14 days to appeal from criminal judgment); see also Gonzalez v. Thaler, 565 U.S. 134, 149-50 (2012) (holding that a petitioner's case finalizes when time for pursuing direct review expires). Those 14 extra days would not affect the timeliness analysis.

Petitioner's one-year period under AEDPA then ran, unimpeded, from September 17, 2018, until it expired one year later on Tuesday, September 17, 2019. Because Petitioner did not file the instant Petition until February 9, 2021 (see Docket Entry 2 at 15), that filing came more than 16 months out of time.

Moreover, Petitioner has not shown entitlement to statutory tolling under 28 U.S.C. § 2244(d)(2). Under that provision, the AEDPA limitations period remains tolled during "[t]he time . . . a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim [remains] pending." 28 U.S.C. § 2244(d)(2). On September 16, 2020, Petitioner addressed a letter to "Judge Stanley Allen" (Docket Entry 17-1 at 24-25), which bears a date-stamp of September 22, 2020 (see id. at 24), in which Petitioner asked the trial court to 1) appoint counsel (see id.), 2) "render [her] sentences concurrently instead of consecutively" (id.), 3) apply her nine months of credit for time served to her 2018 10-year-minimum sentence rather than to her 2016 20-year-minimum sentence (see id.), and 4) "give [her] a chance to go back to court [and] let [her] daughters have a chance to speak in court on [Petitioner's] behalf so [they] can start a healing process" (id. at 25). However, as this Court has held in another such case:

> Petitioner's personal letter to Judge Allen is not a [MAR] under North Carolina's rules. It is not a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. 2244(d)(2); see Artuz v.

9

> Bennett, 531 U.S. 4, 8[] (2000)("[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.")[.] Petitioner's letter to Judge Allen does not meet this criteria. . . . See N.C. Gen. Stat. § 15A-1420 (MARs must state the grounds for the motion, . . . be served on the opponent, and be filed with the [c]lerk [of the trial court]).

Smeltzer v. Beck, No. 1:05CV493, 2006 WL 208871, *2 (M.D.N.C. Jan. 26, 2006) (unpublished) (Sharp, M.J.).

Furthermore, even if Petitioner's letter to Judge Allen qualified as "properly filed," 28 U.S.C. § 2244(d)(2), the letter still could not have tolled the limitations period, because Petitioner submitted the letter well after AEDPA's one-year statute of limitations had already run, see Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (finding that state filings made after expiration of federal limitations period do not restart or revive that period).

In the paragraph of the Petition that directs Petitioner to "explain why the one-year statute of limitations as contained in [AEDPA] does not bar [her P]etition," Petitioner states that she had "been trying to get back into court," but that "[n]o one seem[ed] to want to help until Judge Myers filed for [Petitioner's] writ for habeas corpus." (Docket Entry 2, ¶ 18; see also Docket Entry 5, ¶ 18 (contending that Petitioner had "been trying to get to go back to court sense [sic] 2018 [but] the [District Attorney], judge, wont [sic] respond to tell [her] anything [and North

10

Carolina Prisoner Legal Services ('NCPLS')] tells [Petitioner she] cant [sic] go back to court," as well as that "the prison says one thing and combine [sic] records says something different").) The Court could construe those statements as an attempt by Petitioner to establish grounds for equitable tolling of the limitations period. To qualify for equitable tolling, a petitioner must demonstrate that "(1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in h[er] way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010). Petitioner's alleged inability to obtain assistance from NCPLS and/or various state officials, however, fails to meet that burden to establish grounds for equitable tolling.

To begin, Petitioner's allegations that the District Attorney and "judge" in Petitioner's state-court proceedings have not responded to Petitioner's attempts "to go back to court," as well as that an unnamed individual with NCPLS told Petitioner that she could not "go back to court" (Docket Entry 5, ¶ 18 (emphasis added)),[7] clearly reflect Petitioner's desire to return to state court to address the various matters detailed in her letter to Judge Allen (see Docket Entry 17-1 at 24-25). As such, those allegations entirely fail to establish an "extraordinary

---

[7] An attorney with NCPLS represented Petitioner in the filing of her MAR. (See Docket Entry 13-2 at 4.)

11

circumstance" that prevented her timely filing of a federal habeas petition in this court, Holland, 560 U.S. at 649.

Moreover, "[Petitioner] wholly fail[ed] to detail how [s]he diligently pursued h[er] rights" during the time between the trial court's grant of her MAR and re-sentencing on September 17, 2018, and the expiration of the limitations period on September 17, 2019," and "[t]h[at] alone forecloses [Petitioner]'s entitlement to equitable tolling," Quiroga v. Clarke, No. 3:20CV536, 2021 WL 2231236, at *6 (E.D. Va. June 2, 2021) (unpublished). (See Docket Entry 2, ¶ 18; see also Docket Entry 5, ¶ 18; Docket Entries 16, 17.)

In sum, Petitioner cannot avoid the statute of limitations in this case.[8]

---

[8] After Petitioner filed her Amended Petition, she also filed a letter motion requesting the Court to "expunge[] from the system" her previously vacated convictions ("Letter Motion") (Docket Entry 10 at 1), and attached a report listing those vacated convictions from the North Carolina Department of Public Safety's Combined Records (see id. at 2-3). However, as well-argued by Respondent:

> Pursuant to 28 U.S.C. § 2254(a), a state prisoner is only entitled to federal habeas relief "on the ground that [s]he is in custody in violation of the Constitution or laws or treaties of the United States." The forty-eight convictions from 30 May 2016 that Petitioner seeks relief upon through expungement were vacated when the trial court allowed her [MAR]; therefore, Petitioner is not "in custody" under these convictions. Because Petitioner is "not in custody on the challenged conviction[s], [this] Court lacks subject matter jurisdiction" over Petitioner's claim. See Smith v. Daniels, 1:12CV500, 2012 WL 1898949, *1 (M.D.N.C. May 24, 2012); see also Preiser v. Rodriguez, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."). Moreover, Petitioner does not allege that the presence of the vacated sentences in the records of the North Carolina Department of Public Safety
> (continued...)

12

## IV. Conclusion

The statute of limitations bars the instant Petition and Amended Petition. In addition, her Letter Motion seeking an expungement of vacated convictions does not provide a basis for habeas relief.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 12) be granted, that the Petition (Docket Entry 2) and Amended Petition (Docket Entry 5) be dismissed, that the Letter Motion (Docket Entry 10) be denied, and that a judgment be entered dismissing this action, without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 14, 2022

---

[8](...continued)
constitutes a violation "of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2254(a).

(Docket Entry 15 at 1-2 (internal parenthetical citation and footnote omitted).) Accordingly, the Court should deny Petitioner's Letter Motion.